Slip Op. 17-83

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| CANNAKORP, INC., | |
| Plaintiff, | |
| v. | Before: Mark A. Barnett, Judge |
| UNITED STATES, | Court No. 17-00092 |
| Defendant. | |

MEMORANDUM AND ORDER

[Defendant's motion to dismiss for lack of subject matter jurisdiction is granted. Plaintiff's motions for a show cause order and for leave to file a reply in support of its motion for a show cause order are denied as moot.]

Dated:  July 11, 2017

Kristin H. Mowry, Mowry & Grimson, PLLC, of Washington, D.C., for plaintiff.  With her on the brief were Jeffrey S. Grimson and Jill A. Cramer of Mowry & Grimson, PLLC, of Washington, D.C., and William M. Jay and Andrew Kim, Goodwin Proctor LLP, of Washington, D.C.

Guy Eddon, Trial Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of New York, NY, for defendant.  With him on the brief were Chad A. Readler, Acting Assistant Attorney General, Patricia M. McCarthy, Assistant Director, and Aimee Lee, Senior Trial Counsel.  Of Counsel on the brief was Alexandra Khrebtukova, Office of Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Barnett, Judge:  CannaKorp, Inc. ("CannaKorp" or "Plaintiff") brings this action

against the United States ("Defendant") to challenge a pre-importation ruling issued by

U.S. Customs and Border Protection ("Customs" or "CBP").  See Compl., ECF No. 2.

Defendant moves to dismiss the complaint for lack of subject matter jurisdiction and

failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the

United States Court of International Trade ("USCIT").  *See* Def.'s Mot. to Dismiss and

Def.'s Mem. in Supp. of its Mot. to Dismiss ("Def.'s Mot."), ECF No. 17.  Plaintiff

opposes this motion.  *See* Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp."), ECF No.

18.  For the reasons discussed below, the court grants Defendant's motion to dismiss

for lack of subject matter jurisdiction and dismisses this case.[1]

### BACKGROUND

In April 2016, CannaKorp requested a pre-importation ruling from CBP regarding

its "single-use, pod-based cannabis vaporizer system known as the CannaCloud."

Compl. ¶¶ 1, 24-25.  In its ruling request, CannaKorp sought to "establish that

importation of the CannaCloud is lawful under the Controlled Substances Act [("CSA")],"

21 U.S.C. §§ 801 *et seq.*, because it fell within the ambit of the CSA's exemption

provision, 21 U.S.C. § 863(f)(1).[2]  Compl., Ex. 3 at 1, ECF No. 2-1; *see also* Compl.

¶¶ 26-30.  On March 24, 2017, CBP issued a ruling that the "[CannaCloud] is not

exempted from the prohibition on the importation of drug paraphernalia set forth in 21

U.S.C. § 863(a) and may not be legally imported into the United States because the

---

[1] Plaintiff has moved for an order to show cause why an expedited litigation schedule should not be entered, Pl.'s Mot. for an Order Directing Def. to Show Cause Why an Expedited Litigation Schedule Should Not Be Entered in this Action ("Pl.'s Sched. Mot."), ECF No. 5, which the court construes as a motion for an expedited briefing schedule, and for leave to file a reply in support of that motion, Mot. for Leave to File Reply in Supp. of Pl.'s Mot. for an Order Directing Def. to Show Cause Why an Expedited Litigation Schedule Should Not Be Entered in this Action, ECF No. 15. Because the court finds that it lacks subject matter jurisdiction over this action, Plaintiff's motions are denied as moot.

[2] Subsection 863(f)(1) provides that "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items" is not subject to the prohibitions stated in section 863.  21 U.S.C. § 863(f)(1)(2012).

exemption set forth in 21 U.S.C. § 863(f)(1) does not apply."  Compl., Ex. 1 at 5, ECF

No. 2-1.  On April 27, 2017 CannaKorp filed a complaint seeking judicial review of this

Customs ruling.  *See* Compl.  Plaintiff invokes jurisdiction pursuant to 28 U.S.C.

§ 1581(h),[3] alleging that without pre-importation review, CannaKorp "would experience

irreparable harm . . . through disruption of supplier relationships, lost business

opportunities, and reputational harm [that] threatens the complete failure of

CannaKorp's business."  Compl., ¶¶ 7, 3-11.  Plaintiff further alleges that CBP's ruling

was "arbitrary, capricious, an abuse of discretion and otherwise not in accordance with

law," Compl. ¶ 53, 57, 60, and asks the court to (i) order expedited consideration and

briefing; (ii) declare CBP's ruling unlawful; (iii) "declare that the CannaCloud is not

restricted merchandise" because it is exempted from the CSA pursuant to 21 U.S.C.

§ 863; (iv) order any other relief deemed just and proper; and (v) award CannaKorp and

attorney's fees and costs pursuant to 28 U.S.C. § 2412(d), *id.* ¶ 61.  Defendant has

moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state

a claim upon which relief can be granted.  *See* Def.'s Mot.  Plaintiff opposes this motion.

*See* Pl.'s Resp.

## SUBJECT MATTER JURISDICTION

To adjudicate a case, a court must have subject-matter jurisdiction over the

claims presented.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95

(1998).  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the

---

[3] In its complaint Plaintiff also asserted jurisdiction pursuant to 28 U.S.C. § 1581(i), but
has since withdrawn this invocation.  *See* Compl. ¶ 9; Pl.'s Resp. at 2 n. 1.

court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

A plaintiff bears the burden of establishing subject-matter jurisdiction. *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court proceeds according to whether the motion "challenges the sufficiency of the pleadings or controverts the factual allegations made in the pleadings." *H & H Wholesale Servs., Inc. v. United States*, 30 CIT 689, 691, 437 F. Supp. 2d 1335, 1339 (2006). When the motion challenges the sufficiency of the pleadings, the court assumes that the allegations within the complaint are true. *Id.* When, as here, "the motion controverts factual allegations supporting the [c]omplaint, 'the allegations in the complaint are not controlling,' and 'are subject to fact-finding by the [trial] court.'" *Id.* at 692, 437 F. Supp. 2d at 1339 (quoting *Cedars–Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993)) (alterations added). *Cf. Power-One Inc. v. United States*, 23 CIT 959, 962, 83 F. Supp. 2d 1300, 1303 n.9 (1999) (when a party "challenges the actual existence of subject matter jurisdiction," the "allegations in Plaintiffs' Complaint are not controlling, and only uncontroverted factual allegations are accepted as true").

Pursuant to subsection 1581(h),

The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, . . . relating to . . . restricted merchandise, . . . or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be

irreparably harmed unless given an opportunity to obtain judicial review
prior to such importation.

28 U.S.C. § 1581(h).

A plaintiff must show that it has met four requirements to establish jurisdiction

under subsection (h): "1) review must be sought prior to importation; 2) review sought

must be for a ruling; 3) the ruling must relate to certain subject matter; and 4) the

importer must show that irreparable harm will result unless judicial review prior to

importation is obtained."  *Am. Frozen Food Inst., Inc. v. United States*, 18 CIT 565, 569,

855 F. Supp. 388, 393 (1994) (supplying the requirements); 28 U.S.C. § 2639(b)

(supplying the burden of proof); *see also Heartland By-Prods, Inc. v. United States*, 31

CIT 1711, 1719, 521 F. Supp. 2d 1386, 1393 (2007), *rev'd on other grounds*, 568 F. 3d

1360 (Fed. Cir. 2009) ("The heightened burden of having to demonstrate irreparable

harm under § 1581(h) provides grounds for jurisdiction over disputes that might

otherwise be considered speculative or not ripe for review.  It is precisely this distinction

that makes jurisdiction under § 1581(h) extraordinary.") (citations omitted).  Only the

fourth prong of the jurisdictional criteria, irreparable harm, is at issue here.  *See* Def.'s

Mot. at 4, 5; Pl.'s Resp. at 5.

### LEGAL FRAMEWORK FOR IRREPARABLE HARM

The "standard for proving irreparable harm [in a § 1581(h) case] is essentially

identical to that used to determine irreparable injury in cases where injunctive relief is

sought."  *Connor v. United States*, 24 CIT 195, 199 (2000) (citation omitted).  Plaintiff

must demonstrate, with clear and convincing evidence, that "the harm is highly

probable." *Id.* at 196–97 (citing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1105 (9th Cir.

1992)).  *Cf. Thyssen Steel Co. v. United States*, 13 CIT 323, 326, 712 F. Supp. 202, 204

(1989) (court denied claim of irreparable harm where plaintiff relied solely on an

affidavit); *Holford USA Ltd. v. United States*, 19 CIT 1486, 1491-92, 912 F. Supp. 555,

559-60 (1995) (affidavits and letters proffering relevant facts and contract terms

constituted sufficient evidence supporting claim of irreparable harm).

"Irreparable harm is that which 'cannot receive reasonable redress in a court of

law.'" *Connor*, 24 CIT at 197 (quoting *Manufacture de Machines du Haut-Rhin v. Von

Rabb*, 6 CIT 60, 64, 569 F. Supp. 877, 881-82 (1983)). "In evaluating that harm, the

court must consider 'the magnitude of the injury, the immediacy of the injury, and the

inadequacy of future corrective relief.'" *Shree Rama Enter. v. United States*, 21 CIT

1165, 1167, 983 F. Supp. 192, 194, (1997) (quoting *Queen's Flowers de Colombia v.

United States*, 20 CIT 1122, 1125, 947 F. Supp. 503, 506 (1996).  Of these three

factors, "immediacy [of the injury] and the inadequacy of future corrective relief" may be

weighed more heavily than magnitude of harm.  *Nat'l Juice Prods. Ass'n v. United

States*, 10 CIT 48, 53, 628 F. Supp. 978, 984 (1986) (citations omitted).

Critically, irreparable harm may not be speculative, *see Am. Inst. for Imported

Steel, Inc. v. United States*, 8 CIT 314, 318, 600 F. Supp. 204, 209 (1984), or

determined by surmise, *Elkem Metals Co. v. United States*, 25 CIT 186, 192, 135 F.

Supp. 2d 1324, 1331 (2001) (citation omitted).  "It is not enough to establish 'a mere

possibility of injury, even where prospective injury is great.  A presently existing, actual

threat must be shown.'" *Shree Rama*, 21 CIT at 1167, 983 F. Supp. at 194–95 (quoting *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (2009)).

Economic harm, or injury to the business, may constitute irreparable harm when "the loss threatens the very existence of the movant's business," *Wisc. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (DC. Cir. 1985) (citing *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n. 2 (D.C. Cir. 1977)), and is otherwise noncompensable, *Kwo Lee, Inc. v. United States*, 38 CIT ___,___, 24 F. Supp. 3d 1322, 1327 (2014) ("Financial loss alone—compensable with monetary damages—is not irreparable") (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Economic harm may include financial loss, reputational injuries, and severe business disruption. *Kwo Lee,* 24 F. Supp. 3d at 1327 ("Irreparable harm may take the form of '[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities.'") (quoting *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012); *Sanofi–Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1381–83 (Fed. Cir. 2006)).  Generally, however, "[a]llegations of harm to potential future business relations are too speculative to constitute irreparable harm." *Techsnabexport, Ltd. v. United States*, 16 CIT 420, 428, 795 F. Supp. 428, 437 (1997).

Defendant asserts that the court's jurisdiction rests on Plaintiff's ability to show irreparable harm absent pre-importation judicial review and that it has not done so. Defendant is correct.

## DISCUSSION

Defendant contends that Plaintiff has failed to show by clear and convincing evidence that it will suffer irreparable harm absent pre-importation judicial review.  Def.'s Mot. at 3-16.  Defendant argues that the harms that would allegedly befall CannaKorp, if it were to await an attempted importation to bring its challenge, are speculative, self-inflicted, not of the type considered irreparable, and lacking evidentiary support.  *See* Def.'s Mot. at 8-16; Def.'s Reply Brief in Further Supp. of its Mot. to Dismiss ("Def.'s Reply") at 2-14, ECF No. 19.  Plaintiff responds that "economic injury that threatens the viability of a business, and for which no monetary remedy is available, is irreparable," and that its proffered evidence is sufficient to carry its burden.  Pl.'s Resp. at 6; *see also id.*at 6-17.  Plaintiff denies that its injury is self-inflicted.  *See id*. at 17-21.  Plaintiff particularly points to financial loss, disruption of business operations (including loss of key employees, supplier relationships, and manufacturing facilities), and reputational harm (including loss of market strategy, first-mover status, and consumer goodwill), as constituting irreparable harm.  *See id*. at 11-14.  Plaintiff also argues that this harm is severe enough to threaten the existence of its business, and that it may not be able to seek compensation even if it prevails because of the government's sovereign immunity.  *See id*. at 6-10.

Plaintiff's support for its position is limited to two declarations by James Winokur, the CEO and co-founder of CannaKorp.  Compl., Ex. 2 ("Winokur Decl."), ECF No. 2-1; Pl.'s Resp., Ex. 1 ("Suppl. Winokur Decl.", ECF No. 18-1).  Plaintiff provides no financial records or other documents in support of Mr. Winokur's declarations.  This is significant

because the declarations contain numerous vague, speculative, or conclusory statements, and internal inconsistencies, and are otherwise impossible to corroborate. During the court's teleconference of May 3, 2017, CannaKorp declined the court's offer of an evidentiary hearing at which it could offer testimony and further evidence in support of its motion to expedite.[4]   As discussed more fully below, the declarations are insufficient to meet Plaintiff's burden of proof.  *Cf. Nat'l Min. Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) (CEO's conclusory projections regarding harm to the business are insufficient to establish harm under the standard).

        The court recognizes that, as a start-up business, CannaKorp may believe that it is in a "Catch-22" situation – that it is unable to establish the existence of the economic harm caused by CBP's ruling because the ruling prevents it from getting off the ground and establishing evidence of its viability.  Even if there is some basis for that belief, it does not absolve CannaKorp of the responsibility of supporting its allegations of irreparable harm with clear and convincing evidence appropriate to its situation.  As discussed below, CannaKorp failed to provide any documentation, records, or third-party testimony in support of the harms Mr. Winokur asserts are likely and it is on this basis that CannaKorp's claims fail.

---

[4] In CannaKorp's motion to expedite the briefing in this case, Plaintiff asserted that there was good cause to expedite the briefing schedule because otherwise it would suffer irreparable harm.  *See* Pl.'s Sched. Mot.

### A.    CannaKorp Fails to Establish Actual, Imminent Harm

CannaKorp argues that CBP's ruling has "placed [it] at imminent risk of failure" because of the "significant, if not total, disruption of its business operations in the form of hampered supplier relationships, lost business opportunities, and reputational harm" resulting from the ruling.  Pl.'s Resp. at 2, 11.  Defendant contends that Plaintiff's claim and Mr. Winokur's declarations in support of its arguments regarding imminent harm are speculative, and, thus, fail to demonstrate the irreparable harm required for § 1581(h) jurisdiction.  Def.'s Mot. at 8-12; *see also Def.*'s Reply at 7-14.

(i) Business Disruption

Business disruption may constitute economic harm when the likelihood and nature of the disruption is adequately documented.  *See, e.g.*, *CPC Int'l, Inc. v. United States*, 19 CIT 978, 979, 980-83, 896 F. Supp. 1240, 1243, 1244-45 (1995) (importer demonstrated harm in the form of costs, expenditures, business disruption, and other financial losses through affidavits that detailed these costs and disruption with specificity); *Holford*, 19 CIT at 1492, 912 F. Supp. at 560 (affidavit attesting to harm in the form of increased costs, lost profits and loss to business reputation was supported by letters, relevant contract terms, and details regarding relevant quotas that imposed costs on the importer); *Nat'l Juice Prods.*,[5] 10 CIT at 54, 628 F. Supp. at 984-85

---

[5] *Nat'l Juice Products* has since been superseded by statute, but the change does not relate to the propositions for which it is being cited herein.  *See Precision Specialty Metals, Inc. v. United States,* 24 CIT 1016, 1041, 116 F. Supp. 2d 1350, 1375 (2000) (discussing change to statutory provisions detailing the process by which Customs makes changes to its practice or position).

(plaintiff provided third party affidavits attesting that compliance with a new Customs

ruling would take up to two and a half years and prevent satisfaction of customer

orders).  In contrast, the Winokur declarations contain several vague and internally

inconsistent statements on the extent and nature of the alleged disruption.

First, Mr. Winokur declares that "[t]he CannaCloud is now ready for commercial

manufacture and launch."  Winokur Decl. ¶ 11.  He then, however, avers that

"preparation for launch requires many months of lead time," Winokur Decl. ¶ 16,

"[s]tarting manufacture would require additional capital," Suppl. Winokur Decl. ¶ 7, and

"the financial forecast requires [CannaKorp] to raise an additional $10 million by the first

quarter of 2018 . . . [to] be used for inventory, shipping, and distribution," Winokur Decl.

¶ 20.  It is unclear from these statements whether the product is actually ready for

launch or whether CannaKorp will first need to raise $10 million, followed by the

necessary "lead time" before the product can be launched.

Second, Mr. Winokur's declarations contain inconsistent assertions regarding the

imminent closure of the business.  In the first declaration, prepared in late April 2017,

Mr. Winokur estimates the business will close in August 2017.  Winokur Decl. ¶ 18

("[t]he threat of further delay seriously threatens the company's viability [and that]

without additional revenue or funding, CannaKorp projects that it will run through its

current capital by August 2017").  However, in his second declaration, filed in early June

2017, Mr. Winokur informs the court that the business now has "enough cash to operate

until October" because it has conducted "additional capital fundraising."  Suppl. Winokur

Decl. ¶ 8.

Third, Mr. Winokur uses vague and conditional language to describe the nature and likelihood of harm to its supplier and manufacturer relationships.[6]  Mr. Winokur avers "it is very *likely*" that "current circumstances" will result in "substantial breach of our partnership agreements," whereby CannaKorp's "partners would dismantle the customized CannaCloud assembly lines," Suppl. Winokur Decl. ¶ 10 (emphasis added), and that "in the event of substantial delay, the Chinese company is *likely* to terminate its relationship with CannaCloud," Winokur Decl. ¶ 33 (emphasis added), resulting in "a *potential* claim for damages" and a "*likely* los[s of] its supplier relationship, Winokur Decl. ¶ 34 (emphasis added); *see also id*. ¶ 37 (similar issues with German manufacturer of the cPod whereby "delay . . . *could* constitute a substantial breach of contract" leading the "German manufacturer [to] *likely* sever its relationship with CannaKorp" if the CannaCloud launch is "substantially or indefinitely delayed.")

---

[6] In contrast to the ambiguous language used in Mr. Winokur's declarations, this court has found affidavits to be persuasive when they represent the harm with more certainty and specificity.  *See CPC Int'l,* 19 CIT at 985–86, 896 F. Supp. at 1247–48 (reviewing cases).  For example, in *American Frozen Food Institute*, plaintiffs proffered affidavit evidence that "they *will* lose substantial sums of money from the destruction of stockpiled non-complying labelling"; "that its costs to destroy labels and its printing costs to change labels *would be* in excess of $900,000"; that "labelling redesign [is] projected at over $9 million"; and that "it would be necessary to re-engineer its inventory management process to . . . to ensure that the various labels will correctly reflect the countries of origin for [its product]."  *Am. Frozen Food Inst.* 18 CIT at 570, 855 F. Supp. at 393-94 (emphasis added).  In *Nat'l Juice Products*, plaintiffs offered several affidavits by representatives of third party supply and processing companies detailing challenges to complying with Customs' ruling, such as their inability to timely "provide the necessary labels and cans," preventing the fulfillment of customer orders, and the "substantial" costs to be incurred in preparing new labels and packaging.  *Nat'l Juice Prods.*, 10 CIT at 54, 628 F. Supp. at 985.  Plaintiffs also provided evidence demonstrating their need to warehouse or destroy its current inventory of labels.  *Id.* at 54, 628 F. Supp. at 985.

(emphasis added).  Plaintiff's statements are unsupported by documentary proof, such as copies of contracts showing breach and damages clauses.  Additionally, the uncertainty of Mr. Winokur's assertions of harm are underlined by his assertion that "[i]n light of the fact that CBP's decision *has* delayed launch of the CannaCloud indefinitely, CannaKorp faces a potential claim for damages . . . and will likely lose its supplier relationship."  *Id*. ¶ 34 (emphasis added).

Mr. Winokur is similarly unclear about the nature of the potential harm to CannaKorp's manufacturing relationships, speculating that "[t]he tools and other assets . . . *likely* cannot be transferred to a new manufacturer."  *Id*. ¶ at 35; *see also id*. ¶ 37 (speculating that "the tools and other assets that the German company developed for the cPod's production *likely* cannot be transferred to a new manufacturer") (emphasis added).  Mr. Winokur further speculates that "it is *very likely* that [CannaKorp's manufacturing] partners will claim that we are in substantial breach of our partnership agreements because production orders fell far short of expectations," and that "they *may* take [legal action] for such a breach" and "dismantle [] customized CannaCloud assembly lines and retrain their personnel."  Suppl. Winokur Decl. ¶ 10.  Again, Mr. Winokur's declarations are speculative and conditional, lacking specific details of key contract terms and the ownership of intellectual property and engineering design(s) presumably developed in conjunction with manufacturing partners and with CannaKorp's financial input.  *See, e.g.*, Winokur Decl. ¶ 8 (noting sums spent by CannaKorp in "design, development and production").

Finally, Plaintiff makes vague and unsupported claims regarding potential loss of employees.  *See id.* ¶ 38 ("Without the revenue and additional capital that will result from taking the CannaCloud to market, CannaKorp will not be in a financial position to continue retaining the services of these expert employees."); Suppl. Winokur Decl. ¶ 8 ("CannaKorp has enough cash to operate until October and would be forced to downsize its operations and terminate key employees to remain afloat until then."). Although Mr. Winokur expresses concern that CannaKorp's key employees "are in such demand that they are likely to be hired immediately by another company," Winokur Decl. ¶ 38, his statements do not shed light on whether CannaKorp has entered into non-compete agreements with its key staff, or why the possibility that they may leave the company to work for another company, even a competitor, is something other than the normal course of business in which highly skilled employees may seek more lucrative or rewarding employment.

Taken together, Mr. Winokur's conclusory, at times vague, and unsupported statements do not provide sufficient proof of business disruption to satisfy Plaintiff's burden by clear and convincing evidence.

<u>(ii) Financial Loss</u>

This court has found irrecoverable financial losses to constitute harm when allegations of such losses are supported by clear and convincing evidence.  *See Nat'l Juice Prods.*, 10 CIT at 54-57, 628 F. Supp. at 984-87 (Plaintiff provided affidavits from "a sampling of processors" estimating the substantial cost of new labels and packaging).

Here, Plaintiff's allegations of imminent financial loss are vague, at times contradictory, and unsupported.

Mr. Winokur estimates that CannaKorp faces financial losses of approximately $14.8 million based on the, now delayed, July 2017 launch date and its expectation that 49,700 units would be sold within a year of launch.  Winokur Decl. ¶ 20.  In contrast, in the supplemental declaration he claims that "by the end of 2017, CannaKorp had expected to distribute nearly 4,000 CannaClouds in the United States."  Suppl. Winokur Decl. ¶ 9.  Plaintiff provides no documentation to support its estimated sales and revenue, and, crucially, does not explain how (or why) it expected to sell only 4,000 CannaClouds in the six month period following its July 2017 launch, but in the six to twelve month period thereafter it expected to sell more than twelve times that number. Plaintiff characterizes Defendant's argument that "objective" evidence is needed to support Mr. Winokur's assertions as an argument requiring "independent, third-party" evidence.  Pl.'s Resp. at 3; *see also, e.g.*, Def.'s Resp. at 16.  To the contrary, CannaKorp's own market research and business plans showing some rational basis for its sales and revenue projections would go a long way to support Plaintiff's allegations of financial harm.  As it is, the court cannot evaluate the reasonableness of Plaintiff's assertions or expectations based solely on the statements in Mr. Winokur's declarations.

Plaintiff also makes contradictory assertions regarding the degree to which Customs' ruling impacts its ability to obtain additional funding.  *See* Winokur Decl. ¶ 20 (Customs' ruling "seriously threatens CannaKorp's ability to obtain additional funding . .

. [and] additional investment will be difficult, *if not impossible*, to obtain in light of CBP's

decision") (emphasis added); Suppl. Winokur Decl. ¶ 6 (Customs' ruling "has

significantly *stymied* CannaKorp's ability to attract additional investors," and "those

investors see CBP's decision . . . as the *primary* roadblock to investment") (emphasis

added).  Mr. Winokur's failure to identify the other potential roadblocks prevents the

court from evaluating the veracity of CannaKorp's claim.  Moreover, CannaKorp's

assertions of difficulty in obtaining new investment are contradicted by Mr. Winokur's

admission that the company successfully raised $500,000 in additional capital in the six

weeks following Mr. Winokur's initial declaration, *see* Suppl. Winokur Decl. ¶ 8, that

additional fundraising would be "difficult, if not impossible," Winokur Decl. ¶ 20.

In sum, like Plaintiff's statements on business disruption, Plaintiff's allegations of

financial harm are unsupported and, at times, contradictory.  Plaintiff's proofs are

insufficient and unpersuasive in light of the clear and convincing burden of proof

standard it faces.

### (iii) Reputational Harm

The court considers the loss of customers when reviewing claims of harm when

such loss is sufficiently nonspeculative.  *Compare, e.g.*, *Lois Jeans & Jackets, U.S.A.,*

*Inc. v. United States*, 5 CIT 238, 242, 566 F. Supp. 1523, 1527 (1983) (established

importer and distributor of wearing apparel presented sufficient evidence in the form of

an affidavit and oral testimony during a hearing showing injury to reputation as a reliable

supplier), *with, e.g.*, *Techsnabexport*, 16 CIT at 428, 795 F. Supp. at 437 (affidavits

averring challenges to the establishment of long term business relationships were "too

speculative to constitute irreparable harm").  It also remains incumbent upon the movant

to sufficiently document the alleged harm.  *See Arbor Foods, Inc. v. United States*, 8

CIT 355, 359, 600 F. Supp. 217, 220 (1984) (declining to find harm when nature and

scale of lost profits was "unknown," and loss of benefits from past marketing and

damage to reputation was speculative) (citations omitted).  To the extent that

reputational harm may be considered economic harm, this court has customarily found

such non-measurable harms to rise to this level only when the moving party is able to

show a clear detriment; for example, an existing customer base (and its impending

loss).  *See Heartland*, 23 CIT at 758-59 & n. 8, 74 F. Supp. 2d at 1331 & n. 8 (finding

irreparable harm when party stood to lose its three main customers and had

documented this through an affidavit and "letters from the customers indicating their

plans to take their business elsewhere").

Here, Mr. Winokur's affidavits fail to rise above speculation. Mr. Winokur avers

that Customs' ruling prevents CannaKorp from establishing consumer goodwill as a

result of "first-mover advantage," Winokur Decl. ¶ 29, which it bases on its having

generated "over 20 million views and 50,000 comments, the vast majority of which were

positive and supportive" in response to a Facebook video, *id.* ¶ 30.  Mr. Winokur also

makes repeated reference to potential competitors in the market and the consequent

loss of "market potential" and "first-mover advantage" that allegedly results from CBP's

ruling.  *Id.* ¶¶ 22-30.  Mr. Winokur estimates the monetary value of "first-mover

advantage" in 2017 at $2 million.  *Id.* ¶ 29.  The court simply notes that Facebook views

and comments are an insufficient measure of consumer goodwill and Plaintiff has

submitted no evidence showing it has an established customer base or distribution arrangements.  As such, the harms alleged remain unknown and speculative.

Similarly, CannaKorp provides no documentation or studies explaining or supporting its monetary estimate of its so-called first-mover advantage, particularly in light of Mr. Winokur's assertion that the company had expected to distribute 4,000 CannaClouds by the end of 2017 (suggesting that he valued the first-mover advantage at $500 per unit).  Suppl. Winokur Decl. ¶ 9.  Mr. Winokur's statements, taken together, fail to provide clear and convincing evidence of the alleged reputational harm that CannaKorp would suffer if it cannot challenge Customs' pre-importation ruling. CannaKorp provides no documents or reasoning to support its claims of estimated monetary losses.  Although economic loss need not be precisely measured, the court must have some ability to evaluate the magnitude and imminence of the loss in order to consider the likelihood of harm.  CannaKorp has failed to provide the court with evidence that would enable such an assessment.  As a result, CannaKorp has failed to meet its burden to provide clear and convincing evidence of harm.

### B.       Whether CannaKorp's Alleged Harms are Irreparable

CannaKorp argues that its alleged harms are irreparable because the government's sovereign immunity "makes potential monetary damages irrecoverable." Pl.'s Resp. at 7.  Defendant contends that CannaKorp has failed to carry its burden in proving the economic harms it alleges, Def.'s Reply at 3-4, and that its only other harms

amount to "litigating costs and litigation delay" generally associated with challenges to pre-importation rulings, *id.* at 4-5.

"[T]he fact that economic losses may be unrecoverable does not absolve the movant from its considerable burden' of proving that those losses are 'certain, great and actual." *Nat'l Min. Ass'n*, 768 F. Supp. 2d at 52 (internal quotation marks, citation, and emphasis omitted). Plaintiff has to establish the harm before the court can address the question of recoverability. As discussed above, Plaintiff has failed to establish by clear and convincing evidence that its business would suffer harm. As such, the court need not address whether any of that harm would be recoverable.[7]

To the extent that Plaintiff includes the time and financial costs of litigation in its list of harms, these costs are part and parcel of doing business and do not constitute irreparable harm sufficient to justify jurisdiction pursuant to subsection 1581(h). *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *Fed. Trade Comm'n v. Standard Oil Co. of California*, 449 U.S. 232, 244 (1980) (where plaintiff had argued "that the expense and disruption of defending itself in protracted adjudicatory proceedings constitute[d] irreparable harm," the Court

---

[7] In addition to the arguments addressed above, Defendant also argued that Plaintiff's alleged harms were self-inflicted because of the time-lag between when it filed its patent application (2014) and when it requested the pre-importation ruling from Customs (2016), and because Plaintiff did not "account for the possibility of litigation delay when developing its business model and negotiating its contracts." Def.'s Reply at 6-7; Def.'s Mot. at 13-16; *see also* Pl.'s Resp. at 17-21. Because the court finds that Plaintiff has failed to establish irreparable harm in the first instance, the court need not reach this additional argument.

ruled that, even though "the burden of defending this proceeding will be substantial . . .

[,] 'the expense and annoyance of litigation is 'part of the social burden of living under

government''") (quoting *Petroleum Exploration, Inc. v. Public Service Comm'n*, 304 U.S.

209, 222 (1938)).

### CONCLUSION AND ORDER

The court finds that Plaintiff has failed to establish that it would be irreparably

harmed if it cannot obtain pre-importation judicial review as required by subsection

1581(h).  Although Plaintiff presents the court with claims of business disruption,

financial loss, and reputational harm, the evidence it presents in support of its claims

ranges from vague, to inconsistent, to contradictory.  Thus, Plaintiff has failed to carry

its burden to show by clear and convincing evidence that it faces the harms it alleges.

Because Plaintiff fails to establish the harms, the court need not address its arguments

regarding the irreparability of those harms.  Similarly, the court does not reach

Defendant's arguments regarding Plaintiff's failure to state a claim for which the court

may grant relief.  *See* Def.'s Mot. at 22-24; Def.'s Reply at 14-16; Pl.'s Resp. at 23-25.

Therefore, upon consideration of Defendant's motion to dismiss pursuant to

USCIT Rules 12(b)(1) and 12(b)(6), the response and reply thereto, the complaint and

its exhibits, and upon due deliberation, it is hereby

**ORDERED** that Defendant's motion to dismiss (ECF No. 17) pursuant to USCIT

Rule 12(b)(1) is **GRANTED;** it is further

**ORDERED** that Defendant's motion to dismiss pursuant to USCIT Rule 12(b)(6)

is **DENIED AS MOOT**; it is further

**ORDERED** that Plaintiff's motion for an expedited briefing schedule (ECF No. 5) is **DENIED AS MOOT**; it is further

**ORDERED** that Plaintiff's motion for leave to file a reply in support of its motion for an expedited briefing schedule (ECF No. 15) is **DENIED AS MOOT**; and it is further

**ORDERED** that this action is dismissed.  Judgment will be entered accordingly.


/s/      Mark A. Barnett____
Mark A. Barnett, Judge


Dated: July 11, 2017_____
          New York, New York